UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D'RON BOTTS,<br><br>                              Plaintiff,<br><br>v.<br><br>CORRECTIONAL OFFICER<br>SHEPPARD, et al.,<br><br>                              Defendants. | Case No.:  3:19-cv-01387-DMS-RBM<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE RE: DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[Doc. 43]** |

## I.     INTRODUCTION

Plaintiff D'Ron Botts ("Plaintiff"), a state prisoner proceeding *in forma pauperis* and represented by counsel, brings a civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Paramo, Correctional Officer ("C/O") Newman[1], C/O Camacho, C/O Legue[2], C/O Rodriguez, and C/O Sheppard[3] (collectively, "Defendants").[4]  (Doc. 8.)

_____

[1] Warden Paramo and C/O Newman were dismissed from the instant case on July 6, 2021. *See* discussion *infra* p. 3, section II.B.
[2] Defendants refer to this Defendant by the last name "Legge" in their MSJ; however, the Court will use the spelling utilized in Plaintiff's FAC.  (Docs. 8, 43.)
[3] Defendants refer to this Defendant by the last name "Shepherd," in their MSJ; however, the Court will use the spelling utilized in Plaintiff's FAC.  (*Id.*)
[4] Plaintiff's FAC also alleges claims against C/O Miller and C/O Mitchell; however, both have not been served or made appearances to date.

1

1  Plaintiff alleges Defendants retaliated against him in violation of the First Amendment after
2  Plaintiff allegedly reported corruption at Richard J. Donovan Correctional Facility ("RJD")
3  to California Department of Corrections and Rehabilitation ("CDCR") Director, Brian
4  Duffy.  (Doc. 8 at 3, ¶¶ 5–8.)  Plaintiff also alleges a failure to protect claim under the
5  Eighth Amendment, negligence under California Government Code section 844.6, and a
6  violation of civil rights under the Bane Act, California Civil Code section 52.1, after
7  Plaintiff was allegedly physically attacked by another RJD inmate ("Inmate Tillman").  (*Id.*
8  at 9.)  Presently before the Court is Defendants' motion for summary judgment ("MSJ").
9  (Doc. 43.)  Plaintiff filed an opposition ("Opposition") to Defendants' MSJ on August 27,
10  2021, and Defendants filed a reply ("Reply") on September 10, 2021.  (Docs. 62, 70.)

11  For the reasons outlined below, the undersigned issues a Report and
12  Recommendation as to Defendants' MSJ.  *See* 28 U.S.C. § 636(b)(1)(B); CivLR 72.1(c)
13  and 72.3(a).  After a thorough review of the pleadings, papers, prior orders of the Court,
14  the facts, and applicable law, the undersigned respectfully **RECOMMENDS** that
15  Defendants' motion for summary judgment be **DENIED**.

16  ## II.   FACTUAL & PROCEDURAL BACKGROUND
17  ### A.   Allegations in FAC
18  Plaintiff initiated this action by filing a complaint on July 24, 2019.  (Doc. 1.)  On
19  August 5, 2019, the Court screened the complaint under 28 U.S.C. § 1915 and granted
20  Plaintiff leave to proceed *in forma pauperis*.  (Doc. 6.)  On September 11, 2019, Plaintiff
21  filed a first amended complaint ("FAC") through his counsel of record under 42 U.S.C. §
22  1983 for retaliation under the First Amendment, failure to protect under the Eighth
23  Amendment, negligence, and a violation of the Bane Act against Defendants.  (Doc. 8.)

24  Plaintiff alleges in his FAC that around October 4, 2017, Plaintiff provided visiting
25  CDCR Director Duffy information about corruption at RJD after CDCR Director Duffy
26  asked Plaintiff for his thoughts about the prison.  (*Id.* at 3, ¶¶ 5–7.)  Shortly thereafter,
27  Plaintiff alleges he began receiving threats from Defendants, including death threats.  (*Id.*,
28  ¶¶ 9–10.)  On or around October 13, 2017, Plaintiff alleges, C/O Sheppard, C/O Camacho,

2

C/O Newman, and Does 11–14 orchestrated retaliation against Plaintiff by instructing Inmate Tillman to batter Plaintiff. (*Id.*, ¶ 11.)  After breakfast, Inmate Tillman approached Plaintiff, said, "[y]ou know who sent me", and proceeded to batter Plaintiff. (*Id.*, ¶¶ 12–13.)  During the attack, Plaintiff alleges C/O Legue and C/O Rodriguez cheered, laughed, and made boxing motions as they saw Inmate Tillman batter Plaintiff. (*Id.* at 4, ¶¶ 15–16.) After a few minutes, C/O Legue and C/O Rodriguez told both Inmate Tillman and Plaintiff to get down. (*Id.*, ¶ 17.)  Plaintiff bled through his eye during the attack and alleges he is blind in his left eye as a result of the attack. (*Id.*, ¶¶ 20–22.)

> B.   <u>Surviving Causes of Action in FAC</u>

On July 2, 2021, the parties filed a joint motion to dismiss Defendants C/O Newman and Warden Paramo, which District Judge Sabraw granted without prejudice on July 6, 2021. (Docs. 46, 47.)  Accordingly, Plaintiff's sixth and seventh causes of action for negligent retention and supervisory liability against Warden Paramo have been dismissed. On August 30, 2021, the parties filed a joint motion to dismiss Defendant C/O Camacho from the Eighth Amendment failure to protect and negligence causes of action, which District Judge Sabraw granted without prejudice on September 1, 2021. (Docs. 66, 68.)

The surviving causes of action in Plaintiff's FAC are as follows: (1) retaliation under the First Amendment against C/O Camacho, C/O Legue, C/O Rodriguez, and C/O Sheppard; (2) failure to protect under the Eighth Amendment against C/O Legue, C/O Rodriguez, and C/O Sheppard; (3) negligence under California Government Code section 844.6 against C/O Legue, C/O Rodriguez, and C/O Sheppard; and (4) violation of the Bane Act under California Civil Code section 52.1 against C/O Camacho, C/O Legue, C/O Rodriguez, and C/O Sheppard.[5]

/ / /

---

[5] As to Plaintiff's fifth cause of action for deliberate indifference to serious medical needs against Doe 20 (Doc. 8 at 11), Plaintiff never named or substituted a party for "Doe" defendant and the deadline to do so has now expired. FED. R. CIV. P. 15.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers a court to enter summary judgment on factually unsupported claims or defenses to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is appropriate if the materials in the record, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc).

Each party's position as to whether a fact is disputed or undisputed must be supported by: (1) citation to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) a showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  FED. R. CIV. P. 56(c)(1).  The court may consider other materials in the record not cited to by the parties, but it is not required to do so.  FED. R. CIV. P. 56(c)(3).  If a party supports its motion by declaration, the declaration must set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated.  FED. R. CIV. P. 56(c)(4).  An affidavit will not suffice to create a genuine issue of material fact if it is "conclusory, self-serving . . . [and] lacking detailed facts and any supporting evidence." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law.  *Id.* at 248.  Where, as here, the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When a defendant seeking summary judgment has carried its burden under Rule 56(c), the burden shifts to the plaintiff who "must do more than simply show that there is

4

1    some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380

2    (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87

3    (1986)). The plaintiff "must come forward with specific facts showing that there is a

4    genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal citation omitted). If the

5    plaintiff fails to make a sufficient showing of an essential element of its case, the defendant

6    is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322–23. In ruling on a

7    motion for summary judgment, the nonmoving party's evidence is to be believed, and all

8    justifiable inferences are to be drawn in that party's favor. *Anderson*, 477 U.S. at 255.

## IV.   DISCUSSION

### A.   Exhaustion of Administrative Remedies

11    "The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust

12    'such administrative remedies as are available' before bringing suit to challenge prison

13    conditions." *Ross v. Blake*, 578 U.S. 632, 635 (2016) (quoting 42 U.S.C. § 1997e(a)).

14    "There is no question that exhaustion is mandatory under the PLRA[.]" *Jones v. Bock*, 549

15    U.S. 199, 211 (2007) (citation omitted). The PLRA also requires that prisoners, when

16    grieving their appeal, adhere to CDCR's "critical procedural rules." *Woodford v. Ngo*, 548

17    U.S. 81, 91 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the

18    boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

19    The exhaustion requirement is based on the important policy concern that prison

20    officials should have "an opportunity to resolve disputes concerning the exercise of their

21    responsibilities before being haled into court." *Id.* at 204. The "exhaustion requirement

22    does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v.*

23    *Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). Therefore, a prisoner must pursue an

24    appeal through all levels of a prison's grievance process as long as that process remains

25    available to him. *Ross*, 578 U.S. at 632.

### i.   CDCR Exhaustion Requirements

27    CDCR established an "administrative remedy" for prisoners like Plaintiff to pursue

28    before filing suit under Section 1983. *Williams v. Paramo*, 775 F.3d 1182 (9th Cir. 2015)

1   (citing *Albino*, 747 F.3d at 1172).   Specifically, a California prisoner may appeal "any

2   policy, decision, action, condition, or omission by the department or its staff that [he] can

3   demonstrate as having a material adverse effect upon his . . . health, safety, or welfare."

4   Cal. Code Regs., tit. 15, § 3084.1(a).

5          Since January 28, 2011, and during the times alleged in Plaintiff's FAC, Title 15 of

6   the California Code of Regulations required three formal levels of appeal review.   (Defs.'

7   Ex. 4 Decl. of E. Frijas, Doc. 43–6 at 1, ¶ 2.)   Thus, in order to properly exhaust, a California

8   prisoner must, within thirty calendar days of the decision or action being appealed, or

9   "upon first having knowledge of the action or decision being appealed, . . . use a CDCR

10   Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal

11   and the relief requested."   (*Id.*)   The CDCR Form 602 "shall be submitted to the appeals

12   coordinator at the institution."   (*Id.*)

13          Defendants submit the declaration of E. Frijas who is the "Grievance Coordinator at

14   [RJD] . . . and is familiar with the processing of inmate grievances at RJD[,]" wherein E.

15   Frijas declares Plaintiff submitted a CDCR Form 602 appeal on October 25, 2017, which

16   was initially rejected and resubmitted on November 5, 2017.   (Defs.' Ex. 4 Decl. of E.

17   Frijas, Doc. 43–6 at 1, 4, ¶¶ 1, 6.)   Additionally, Plaintiff's appeal was accepted at the

18   second level, reviewed by the third level of appeals, and ultimately denied.   (*Id.* at 4, ¶ 6.)

19   There is no dispute that Plaintiff sought the required three levels of review.

20                    ii.    *Failure to Name Defendants in Prison Appeal*

21          Defendants seek summary judgment on exhaustion grounds in favor of C/O Legue

22   and C/O Rodriguez claiming Plaintiff failed to identify both Defendants in Plaintiff's

23   grievance.[6]   (Doc. 43 at 25.)   In response, Plaintiff claims he failed to name these

24   Defendants because CDCR's administrative remedies were "unavailable" pursuant to

25   *McBride v. Lopez*, 807 F.3d 982 (9th Cir. 2015). (Doc. 62 at 13–14.)

26   _____

27

28   [6] Defendants do not dispute that Plaintiff exhausted his administrative remedies against
     C/O Camacho and C/O Sheppard. (Doc. 43.)

Defendants submit the declaration of E. Frijas, wherein E. Frijas declares Plaintiff's October 25, 2017 "appeal did not contain allegations that Defendants . . . C. Legge [and] R. Rodriguez fail[ed] to protect Plaintiff from an attack by another inmate in October 2017 . . . ." (Defs.' Ex. 4 Decl. of E. Frijas, Doc. 43–6 at 1, ¶ 1, 6.)  Plaintiff's October 25, 2017, CDCR Form 602 appeal provides the following:

> Sgt's all cheered praise to I/m Tillmans [sic] attack on me, some [sic] sang songs, laughed, while others high fived, while mocking certain parts of the incident [and] made comments . . . [r]equesting that all these staff, as well as the 15 building staff [sic], those that do group escorts the days of 10–13, 10–14 have knowledge of the . . . incident and did nothing to stop it . . . .

(Defs.' Ex. A, Doc. 43–7 at 5.)  Plaintiff claims he did not identify C/O Camacho and C/O Sheppard for fear of retaliation under *Ross* and *McBride*.  (Doc. 62 at 16 (citing *Ross*, 578 at 632; *McBride*, 807 F.3d at 982)).

Under *Jones*, prisoners must adhere to the administrative review process in accordance with procedural rules, not defined by PLRA.  *Woodford v. Ngo*, 548 U.S. 81 (2006).  California regulations require that:

> [t]he inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue . . . [i]f the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs., tit. 15, § 3084.2(a)(3).  Courts have granted summary judgment for non-exhaustion where plaintiff failed to comply with Title 15 of the California Code of Regulations.  *See Ruiz v. Oliveira*, 17cv1914-DMS-NLS, 2019 WL 3082164 (S.D. Cal. July 15, 2019); *see also Martinez v. Swift,* No. C 13-3973 RS (PR), 2015 WL 1349525, at *2 (N.D. Cal. Mar. 25, 2015) (granting summary judgment for non-exhaustion because the grievance "does not mention [defendant] or describe with any specificity his actions or words" and therefore did not comply with Section 3084.2(a)(3)).  However, the Ninth Circuit has held that "[a] grievance suffices to exhaust a claim if it puts the prison on

7

1   adequate notice of the problem for which the prisoner seeks redress." *Sapp v. Kimbrell*,

2   623 F.3d 813, 824 (9th Cir. 2010).

3        Here, Plaintiff did not name C/O Legue and C/O Rodriguez in his CDCR Form 602

4   appeal.   However, Plaintiff's CDCR Form 602 appeal generally refers to staff who

5   witnessed the attack, including staff who conducted group escorts on October 13th and

6   October 14th. (Defs.' Ex. A CDCR Form 602 Appeal, Doc. 43–7 at 3–11.)   Plaintiff's

7   FAC alleges Defendants C/O Legue and C/O Rodriguez witnessed and responded to the

8   attack, and C/O Rodriguez escorted Plaintiff to the hospital after the incident, therefore,

9   Plaintiff's appeal as a whole suffices to alert RJD that Plaintiff's prison appeal implicitly

10  referred to C/O Legue and C/O Rodriguez. (Doc. 62 at 9); *see Catanzarite v. Pierce*, No.

11  1:12-CV-01502-LJO, 2015 WL 3774285, at *9 (E.D. Cal. June 16, 2015), *report and

12  recommendation adopted*, No. 1:12-CV-01502-LJO, 2015 WL 4756094 (E.D. Cal. Aug.

13  11, 2015) (finding sufficient exhaustion where a hearing committee was identified by the

14  group title and date of action without specific names); *see also Garcia v. Cate,* No.

15  EDCV131610JFWMAN, 2015 WL 5998607, at *7 (C.D. Cal. June 4, 2015), *report and

16  recommendation adopted*, No. EDCV1301610JFWDFM, 2015 WL 5971550 (C.D. Cal.

17  Oct. 13, 2015) (finding grievance that failed to name defendant was sufficient where

18  grievance as a whole was sufficient to alert prison to issue complained about).   Moreover,

19  Plaintiff complied with the administrative review process in accordance with procedural

20  rules. Cal. Code Regs., tit. 15, § 3084.2.

21       Therefore, the undersigned **RECOMMENDS** summary judgment in favor of C/O

22  Legue and C/O Rodriguez be **DENIED** on exhaustion grounds.

23          *iii.*   *Request for Albino Hearing*

24       Defendants request an evidentiary hearing on exhaustion should the Court deny

25  summary judgment on exhaustion grounds. (Doc. 70 at 11.)

26       In *Albino*, the Ninth Circuit explained that, if feasible, the trial court should decide

27  the exhaustion issue before reaching the merits of a prisoner's claim. *Albino*, 747 F.3d at

28  1170. If necessary, the court may resolve disputed facts relevant to exhaustion in the same

8

1   way that courts resolve facts for matters of "judicial traffic control"—such as subject matter

2   jurisdiction, personal jurisdiction, venue, and abstention.  *Id.* (quoting *Pavey v. Conley*,

3   544 F.3d 739, 741 (7th Cir. 2008)).  If a factual finding on a disputed question concerns

4   both exhaustion and the merits, the court's factual finding on exhaustion does not bind the

5   jury. *Lear v. Akanno*, No. 115CV01903DADJDP, 2018 WL 4182529, at *2 (E.D. Cal.

6   Aug. 30, 2018) (denying request for *Albino* hearing where the analysis turned on issues of

7   law rather than factual disputes). "If the district judge holds that the prisoner has exhausted

8   available remedies, . . . the case may proceed to the merits." *Ledesma v. Adame*, No. 1:13-

9   cv-01227-AWI-EPG (PC), 2017 WL 4123305, at *4 (E.D. Cal. Sept. 15, 2017) (quoting

10  *Albino*, 747 F.3d at 1170).

11      Here, the analysis into whether Plaintiff exhausted his administrative remedies turns

12  on issues of law as the issue is whether Plaintiff's allegations sufficiently placed RJD on

13  adequate notice of C/O Legue and C/O Rodriguez's alleged involvement.  Therefore, the

14  undersigned **RECOMMENDS** Defendants' request for an *Albino* hearing be **DENIED**.

15      B.    First Amendment Retaliation – First Cause of Action

16      Defendants seek summary judgment in favor of C/O Camacho and C/O Sheppard as

17  to Plaintiff's First Amendment retaliation claim arguing Plaintiff did not engage in

18  protected activity when Plaintiff told CDCR Director Duffy about corruption at RJD. (Doc.

19  43 at 15–17.)  Plaintiff argues his statements to CDCR Director Duffy were on matters of

20  public concern and therefore, protected.  (Doc. 62 at 20.)  Plaintiff's FAC asserts a

21  retaliation cause of action against Defendants C/O Camacho, C/O Legue, C/O Rodriguez,

22  and C/O Sheppard; however, Defendants do not seek summary judgment in favor of C/O

23  Legue and C/O Rodriguez.[7]  (Doc. 8 at 5–7.)  Therefore, retaliation claims against C/O

24  Legue and C/O Rodriguez are not addressed below.

25      "Prisoners have a First Amendment right to file grievances against prison officials

26

27

28  ―――――――――――――――――――――――――
[7] Defendants only seek summary judgment in favor of C/O Legue and C/O Rodriguez on exhaustion grounds. (Doc. 43 at 25–32.)

1   and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th

2   Cir. 2012).

3       Within the prison context, a viable claim of First Amendment retaliation
4       entails five basic elements: (1) An assertion that a state actor took some
        adverse action against an inmate (2) because of (3) that prisoner's protected
5       conduct, and that such action (4) chilled the inmate's exercise of his First
        Amendment rights, and (5) the action did not reasonably advance a legitimate
6       correctional goal.

7

8   *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

9           i.   *Protected Activity*

10      Under *Entler v. Gregoire*, 872 F.3d 1031, there is no distinction between verbal and

11  nonverbal threats to file a lawsuit or prison appeal. In *Entler*, plaintiff's written threat to

12  file a lawsuit was protected. *Jones v. Williams*, 791 F.3d 1023 (9th Cir. 2015) (verbal

13  complaint of discrimination plus intent to file suit was protected conduct). Moreover,

14  courts have found protected activity where an informal complaint was submitted in a

15  different form, including verbal complaints to a superior. *See Gathrite v. Wilson*, No. 3:19-

16  cv-01852-JAH-NLS, 2020 WL 4201668 (S.D. Cal. July 22, 2020); *see also Ahmed v.

17  Ringler*, No. 2:13-CV-1050 MCE DAD, 2015 WL 502855, at *4 (E.D. Cal. Feb. 5, 2015)

18  (finding inmate's verbal complaints about improper search of cell and seizure of his

19  property to superior constituted protected conduct); *see also Hackworth v. Torres*, No.

20  1:06–cv–773 RC, 2011 WL 1811035, at *1 (E.D. Cal. May 12, 2011) (rejecting defendant's

21  argument that prisoner's verbal objections to a prison policy during housing classification

22  committee meeting with prison staff was not protected by the First Amendment because

23  the inmate had not filed a written grievance); *see also Leslie v. Claborne*, 1:19-cv-00366-

24  NONE-GSA-PC, 2021 WL 4523720, at *4 (E.D. Cal. Oct. 4, 2021) (finding plaintiff's

25  reporting of officer misconduct to a captain was protected); *see also Uribe v. McKesson*,

26  No. 08-cv-1285 DMS (NLS), 2011 WL 9640, at *12 (prisoner's attempt to report a prison

27  official's misconduct, either "verbally or in writing, constitutes speech or conduct entitled

28  to First Amendment protection.").

Plaintiff alleges he complained to CDCR Director Duffy "about many problems in his unit, including corruption, [and] the correctional officers bribing inmates to attack other inmates, . . . [,]" but did not provide names.  (Doc. 62 at 21.)  Although Plaintiff did not file a formal written grievance, some courts have concluded in the context of prisoner civil rights actions under Section 1983, "that verbal statements made by an inmate that ***essentially constitute a grievance***, or that indicate an intent to file a formal written grievance are protected by the First Amendment."  *Garcia v. Strayhorn*, No. 13-CV-807-BEN (KSC), 2014 WL 4385410, at *6 (S.D. Cal. Sept. 3, 2014) (emphasis added) (citing *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) (declining to hold that "legitimate complaints by a prisoner lose their protected status simply because they are spoken.")).  Moreover, courts have recognized informal verbal complaints outside of the formal grievance process as protected activity.  *Loftis v. Montes*, No. 218cv4769JFWGJS, 2020 WL 1290842 (C.D. Cal. Feb. 11, 2020) (finding "no material distinction between retaliation in the Title VII context and prisoner retaliation," and Ninth Circuit jurisprudence has long held that "making an informal complaint to a supervisor is a protected activity under Title VII anti-retaliation provision.") (citing *Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000)) (citing *Equal Employment Opportunity Commission v. Hacienda Hotel*, 881 F.2d 1504, 1514 (9th Cir. 1989)).  Therefore, Plaintiff raises a triable issue of fact as to the first element of retaliation.

        *ii.*    *Adverse Action*

"The mere threat of harm can be an adverse action . . . ."  *Watison*, 668 F.3d at 1114 (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009)).  An adverse action taken against a prisoner "need not be an independent constitutional violation." *Watison*, 668 F.3d at 1114.

With respect to his retaliation claim, Plaintiff alleges C/O Camacho and C/O Sheppard conspired to take adverse action against him for reporting corruption at RJD to CDCR Director Duffy.  Specifically, Plaintiff alleges C/O Camacho said, "he would mail Plaintiff home in a pine box" and gave Inmate Tillman access to Plaintiff's cell the day

1    prior to the attack.  (Doc. 62 at 8; Pl.'s Ex. 8, Doc. 62–3 at 34.)  Defendants argue C/O
2    Camacho and C/O Sheppard were uninvolved and not present for the attack.  (Doc. 43 at
3    12.)  Because it is disputed whether C/O Camacho and C/O Sheppard took adverse action
4    against Plaintiff, Plaintiff raises a triable issue of fact as to the second element of retaliation.

5                *iii.*    *Causation*

6           To prevail on a retaliation claim, a plaintiff must show that his protected conduct
7    was "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Soranno's*
8    *Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir.1989).  To show the presence of this
9    element on a motion for summary judgment, Plaintiff need only "put forth evidence of
10   retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue
11   of material fact as to [Defendants'] intent." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir.
12   2003).

13          Here, Plaintiff alleges he received threats from various staff after he discussed staff
14   misconduct with CDCR Director Duffy.  (Doc. 8 at 5–6, ¶¶ 28–29.)  In response to
15   Defendants' MSJ, Plaintiff presents evidence that he spoke with CDCR Director Duffy in
16   early October 2017 and shortly thereafter began receiving threats from various staff,
17   including Defendants. (Doc. 62 at 8.)  Plaintiff presents interrogatory responses claiming
18   that C/O Sheppard regularly "called Plaintiff a bitch, a rat, and said snitches get stitches."
19   (Doc. 62 at 8; Pl.'s Ex. 8, Doc. 62–3 at 34.)  Additionally, Plaintiff also claims C/O
20   Camacho said, "he would mail Plaintiff home to his momma in a pine box" and allowed
21   Inmate Tillman access to Plaintiff's cell before the attack during which Inmate Tillman
22   showed Plaintiff a knife.  (*Id.*)  Due to the proximity in time between Plaintiff's
23   communication with CDCR Director Duffy and threats received from Defendants, Plaintiff
24   presents a genuine issue as to Defendants' retaliatory motive.  Therefore, Plaintiff raises a
25   triable issue of fact as to the third element of retaliation.

26             *iv.*    *Chilled Exercise of First Amendment Rights*

27          In *Rhodes*, the Court held that an objective standard governs the chilling inquiry.
28   *Rhodes*, 408 F.3d at 559; *see also Brodheim*, 584 F.3d at 1262.  The question is whether

12

1   the adverse action would chill or silence a person from engaging in First Amendment

2   activities. Orchestrating an attack on an inmate who exercised his First Amendment rights

3   would silence a person and meet the objective standard. *See Watison*, 668 F.3d at 1116

4   (finding an officer's threat of physical violence was chilling conduct). Therefore, Plaintiff

5   raises a triable issue of fact as to the fourth element of retaliation.

6               *v.*      *Legitimate Correctional Goal*

7           With respect to the fifth element, a prisoner plaintiff "bears the burden of pleading

8   and proving the absence of legitimate correctional goals for the conduct of which he

9   complains." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Here, Plaintiff alleges

10  "threatening and physically harming someone to stop him from reporting corruption

11  advances no correctional goals; it hurts correctional goals." (Doc. 8 at 6, ¶ 35.)

12  Defendants' MSJ is silent on whether Defendants' conduct or lack thereof reasonably

13  advanced a legitimate correctional goal. Therefore, Plaintiff raises a triable issue of fact as

14  to the fifth element of retaliation.

15          For the reasons stated above, the undersigned **RECOMMENDS** summary judgment

16  in favor of C/O Camacho and C/O Sheppard as to the retaliation claim be **DENIED**.

17          C.    <u>Qualified Immunity as to Retaliation Claim</u>

18          The undersigned now turns to Defendants' argument that Defendants are entitled to

19  qualified immunity as existing case law does not support a retaliation claim based on verbal

20  complaints made outside of the grievance process. (Doc. 43 at 18.)

21          Government officials enjoy qualified immunity from civil damages unless their

22  conduct violates clearly established statutory or constitutional rights. *Jeffers v. Gomez*,

23  267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

24  (1982)). When a court is presented with a qualified immunity defense, the central questions

25  for the court are: (1) whether the facts alleged, taken in the light most favorable to the

26  plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional

27  right; and (2) whether the right at issue was "clearly established." *Saucier v. Katz*, 533

28  U.S. 194, 201 (2001). The Supreme Court has held that "while the sequence set forth there

1    is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*,

2    555 U.S. 223, 236 (2009).

3        "A government official's conduct violate[s] clearly established law when, at the time

4    of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every

5    'reasonable official would have understood that what he is doing violates that right.'"

6    *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S.

7    635, 107 (1987)). "[E]xisting precedent must have placed the statutory or constitutional

8    question beyond debate." *Ashcroft*, 563 U.S. at 741; *see also Clement v. Gomez*, 298 F.3d

9    898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law

10   [at the relevant time] gave 'fair warning' to the officials that their conduct was

11   unconstitutional.") (quoting *Saucier*, 533 U.S. at 202). The inquiry "must be undertaken

12   in light of the specific context of the case, not as a broad general proposition . . . ." *Saucier*,

13   533 U.S. at 201. Because qualified immunity is an affirmative defense, the burden of proof

14   initially lies with the official asserting the defense. *Harlow*, 457 U.S. at 812.

15                    i.      *Violation of a Constitutional Right*

16       Plaintiff alleges that C/O Camacho and C/O Sheppard retaliated against Plaintiff

17   after he reported misconduct by threatening Plaintiff and orchestrating an attack by Inmate

18   Tillman. As explained above, viewing these allegations in the light most favorable to

19   Plaintiff, Defendants' conduct violated his constitutional right to be free from retaliation

20   under the First Amendment. *See supra* pp. 9–13. Therefore, the first question is answered

21   in the affirmative.

22                    ii.     *Clearly Established*

23       Defendants argue it was not clearly established at the time of the alleged events in

24   2017 that a prisoner's general verbal complaint to a prison official outside of the formal

25   grievance process constituted protected conduct under the First Amendment for purposes

26   of a retaliation claim. (Doc. 43 at 18.) Defendants cite district court cases *Harvey v.*

27   *Barbour* and *Bobadilla v. Knight*, to show a lack of consensus of cases finding that general

28   oral complaints can form the basis of a retaliation claim; however, both cases were decided

                                        14

years after the October 2017 incident, therefore, these cases are inapplicable. *Harvey*, No. 2:12-cv-02029 KJM DB, 2021 U.S. Dist. LEXIS 49350 (E.D. Cal. Mar. 16, 2021); *Bobadilla*, No. 2:18-cv-1778 JAM KJN P, 2020 U.S. Dist. LEXIS (E.D. Cal. July 20, 2020); *Saucier*, 533 U.S. at 202 (the proper inquiry is whether the state of the law at the relevant time gave 'fair warning' to the officials that their conduct was unconstitutional).

A prisoner's right to be free from retaliation after filing a grievance or threating to sue is clearly established under *Jones*, *Rhodes*, and *Watison*. *See Jones*, 791 F.3d at 1023; *Rhodes*, 408 F.3d at 559; *Watison*, 668 F.3d at 1108. Although the above-referenced cases are slightly distinguishable from the instant case as Plaintiff does not allege he threatened to sue or file a grievance when he spoke with CDCR Director Duffy, there need not be "a case directly on point for a right to be clearly established . . . ." *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (per curiam) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). The Ninth Circuit in *Entler* found that plaintiff's informal verbal complaints were protected under the First Amendment and explained that "*[t]he threat of civil litigation if a prisoner's complaints are not redressed is implicit in every grievance*; explicitly articulating that threat as a precursor to initiating civil litigation does not suddenly make that threat more intimidating or coercive." *Entler*, 872 F.3d at 1042 (emphasis added). In *Shepard v. Quillen*, where plaintiff was placed in administrative segregation after reporting officer misconduct, the Ninth Circuit found defendant was not entitled to qualified immunity because "[a] prisoner's general right against retaliatory punishment was clearly established." *Shepard*, 840 F.3d 686, 688, 693 (9th Cir. 2016).

Moreover, a number of courts have concluded that "verbal statements made by an inmate that *essentially constitute a grievance* . . . are protected by the First Amendment." *Garcia*, 2014 WL 4385410, at *2 (S.D. Cal. Sept. 3, 2014) (emphasis added); *see also Uribe*, 2011 WL 9640, at *12 (E.D. Cal. Jan. 3, 2011) (court construed plaintiff's verbal effort to report an incident to a sergeant was an attempt to initiate a grievance and thus, entitled to First Amendment protection). Because courts, including the Ninth Circuit, have recognized that verbal complaints made outside of the formal grievance process may

15

1   constitute protected activity, *supra* pp. 9–13, Defendants had a "fair warning" that their

2   alleged retaliatory conduct was unconstitutional after Plaintiff reported RJD staff

3   corruption and misconduct to a CDCR official during a prison audit. (Doc. 8 at 3; *see also*

4   *Saucier*, 533 U.S. at 202.)

5       Therefore, the undersigned **RECOMMENDS** summary judgment in favor of C/O

6   Camacho and C/O Sheppard as to the retaliation claim be **DENIED** on qualified immunity

7   grounds.

8       D.   Eighth Amendment Failure to Protect – Second Cause of Action[8]

9       Plaintiff's Eighth Amendment Failure to Protect claim against C/O Sheppard is no

10  longer at issue for purposes of Defendants' MSJ as Defendants acknowledge Plaintiff

11  raises issues of disputed facts against C/O Sheppard. (Doc. 70 at 2, fn. 1.) Accordingly,

12  Defendants withdraw their arguments for summary judgment in favor of C/O Sheppard.

13  (*Id.*) Based on Defendants' concession, the undersigned **RECOMMENDS** summary

14  judgment in favor of C/O Sheppard as to the failure to protect claim be **DENIED**.

15      E.   Negligence – Third Cause of Action[9]

16      In their reply brief, Defendants also concede Plaintiff raises issues of disputed facts

17  against C/O Sheppard, therefore, the negligence cause of action against C/O Sheppard for

18  purposes of Defendants' MSJ is no longer at issue. (*Id.*) Based on Defendants' concession,

19  the undersigned **RECOMMENDS** summary judgment in favor of C/O Sheppard as to the

20  negligence claim be **DENIED**.

21

22  _____

23  [8] Plaintiff's FAC asserts a failure to protect cause of action against Defendants C/O

24  Camacho, C/O Legue, C/O Rodriguez, and C/O Sheppard; however, Defendants do not
    seek summary judgment in favor of C/O Legue and C/O Rodriguez on this cause of action,

25  and C/O Camacho was dismissed from this cause of action on September 1, 2021. (Doc.

26  68.)
    [9] Plaintiff's FAC asserts a negligence cause of action against Defendants C/O Camacho,

27  C/O Legue, C/O Rodriguez, and C/O Sheppard; however, Defendants do not seek summary
    judgment in favor of C/O Legue and C/O Rodriguez, and C/O Camacho was dismissed

28  from this cause of action on September 1, 2021. (Doc. 68.)

F.   Violation of Bane Act – Fourth Cause of Action[10]

Defendants seek summary judgment in favor of C/O Camacho and C/O Sheppard as to Plaintiff's cause of action under the Bane Act for retaliation, wherein they argue Plaintiff cannot prove an underlying constitutional violation for the same reasons that the federal First Amendment retaliation cause of action fails.  (Doc. 43 at 20.)

California Civil Code section 52.1, commonly known as the Bane Civil Rights Act, provides:

> [a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with [by threats, intimidation, or coercion], may institute and prosecute . . . a civil action for damages.

*Fernandez v. Morris*, No. 08–CV–0601 H(PCL), 2008 U.S. Dist. LEXIS 54298, at *23 (S.D. Cal. July 16, 2008) (quoting Cal. Civ. Code § 52.1(b)).  "The essence of a Bane Act claim is that the defendant, by 'threats, intimidation or coercion,' tried to or did prevent the plaintiff from doing something he or she had the right to do under the law, or to force the plaintiff to do something that he or she was not required to do under the law."  *Shoval v. San Diego Cnty.*, No. 09–CV–01348–H (JMA), 2009 U.S. Dist. LEXIS 77723, at *10 (S.D. Cal. Aug. 31, 2009) (quoting *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334 (1998)).

Plaintiff asserts C/O Camacho and C/O Sheppard interfered with his First Amendment rights with threats and physical violence.  (Doc. 62 at 8; Pl.'s Ex. 8, Doc. 62–3 at 34; Doc. 62 at 9; Pl.'s Ex. 2 Farmer Depo., Doc. 62–3 at 11.)  On the other hand, Defendants claim C/O Camacho and C/O Sheppard were not involved with the attack. (Defs.' Ex. B Decl. of Sheppard, Doc. 43–9 at 1–2; Defs.' Ex. B Decl. of Camacho, Doc. 43–10 at 1–2.)  As explained above, *supra* pp. 9–13, viewing Plaintiff's allegations in the

---

[10] Plaintiff's FAC asserts a Bane Act cause of action against Defendants C/O Camacho, C/O Legue, C/O Rodriguez, and C/O Sheppard; however, Defendants do not seek summary judgment in favor of C/O Legue and C/O Rodriguez.  (Doc. 43.)

light most favorable to Plaintiff, Plaintiff has raised a genuine issue of material fact as to his retaliation claim and therefore, could show an underlying constitutional violation. Moreover, it would be inappropriate for the Court to resolve this claim by weighing conflicting declarations. *See Bryant v. Armstrong*, No. 08CV02318 W RBB, 2012 WL 7680324, at *26 (S.D. Cal. Aug. 3, 2012), *report and recommendation adopted*, No. 08-CV-2318 W RBB, 2013 WL 941521 (S.D. Cal. Mar. 11, 2013) (court denied summary judgment as to First Amendment retaliation claim and state law claim where contradictory statements existed); *see also Hunter v. Odom*, No. 19-cv-00847-JST, 2019 WL 1560458 (N.D. Cal. Apr. 9, 2019) (summary judgment as to Bane Act denied where plaintiff stated cognizable claim for First Amendment retaliation).

Therefore, the undersigned **RECOMMENDS** summary judgment in favor of C/O Camacho and C/O Sheppard as to the Bane Act cause of action be **DENIED**.

## V.    CONCLUSION

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) **ADOPTING** this Report and Recommendation and (2) **DENYING** Defendants' motion for summary judgment.  (Doc. 43.)

**IT IS ORDERED** that no later than **January 27, 2022**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 10, 2022**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATE: January 13, 2022

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE

18